IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARSHA A. LANCASTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-07-1430-M |
| v. ) | |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her concurrent applications for disability insurance and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be affirmed.

I. Background

Plaintiff protectively filed her applications for benefits on September 21, 2004. (TR 73-75, 373-375). Plaintiff alleged that she became disabled in March or April 2004, due to seizures, panic attacks, back problems, and depression. (TR 73, 86, 90-91, 373). Plaintiff

1

described prior work as a cashier, nurse's aide, "car hop," and restaurant preparation cook. (TR 78, 91, 100). Plaintiff described an eleventh grade education and vocational training as a certified nursing assistant and massage therapist. (TR 98). Plaintiff also indicated that in June 2005 she had been diagnosed with bipolar, anxiety, and post-traumatic stress disorders. (TR 141, 148).

Plaintiff's applications were administratively denied. (TR 25, 26, 382, 383). At Plaintiff's request, a hearing *de novo* was conducted before Administrative Law Judge Thompson ("ALJ") on November 27, 2006. (TR 483-516). At this hearing, Plaintiff and a vocational expert ("VE") testified. The ALJ issued a decision on March 30, 2007, in which the ALJ found that Plaintiff was capable of working at her previous jobs and therefore was not disabled within the meaning of the Social Security Act. (TR 15-24). Plaintiff requested review of the decision by the Appeals Council. In connection with the administrative appeal of the ALJ's decision, Plaintiff submitted additional medical evidence. (TR 387-401, 410-482). On December 6, 2007, the Appeals Council denied the request for review. (TR 6-9). Plaintiff now seeks judicial review of the final decision of the Commissioner embodied in the ALJ's determination.

II. Standard of Review

Judicial review of this action is limited to determining whether the Commissioner's decision is based upon substantial evidence and whether the correct legal standards were applied. Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir. 1991). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). Because "all the ALJ's required findings must be supported by substantial evidence," Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999), the ALJ must "discuss[ ] the evidence supporting [the] decision" and must also "discuss the uncontroverted evidence [the ALJ] chooses not to rely upon, as well as significantly probative evidence [the ALJ] rejects." Clifton v. Chater, 79 F.3d 1007, 1010 (10th Cir. 1996). The court may not reweigh the evidence or substitute its judgment for that of the Commissioner. Hamilton v. Secretary of Health & Human Servs., 961 F.2d 1495, 1498 (10th Cir. 1992). However, the court must "meticulously examine the record" in order to determine whether the evidence in support of the Commissioner's decision is substantial, "taking into account whatever in the record fairly detracts from its weight." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004)(internal quotation omitted).

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i), 1382c(a)(3)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f) (2008); see also Grogan v. Barnhart, 399 F.3d 1257, 1261 (10th Cir. 2005)(describing five steps in detail). Where a *prima facie* showing is made that the plaintiff has one or more severe impairments and can no longer engage in prior work activity, "the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient residual functional capacity (RFC) to perform work in the national

economy, given [the claimant's] age, education, and work experience." Grogan, 399 F.3d at 1261; accord, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).

III. ALJ's Decision

Following the requisite sequential analysis, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since the date on which she alleged she became disabled, March 1, 2004. (TR 17). At step two, the ALJ found that Plaintiff had severe impairments due to a seizure disorder, obesity, anxiety disorder, bipolar disorder, and posttraumatic stress disorder. (TR 17). The ALJ specifically found that Plaintiff's alleged back and shoulder pain did not constitute a severe impairment. (TR 18). At step three, the ALJ found that Plaintiff's impairments were not *per se* disabling under the agency's Listing of Impairments and particularly listings 11.02, 11.03, 12.04, and 12.06. (TR 18). At the fourth step, the ALJ considered Plaintiff's statements in the record and her testimony as well as the medical evidence and found that despite Plaintiff's impairments she had the residual functional capacity ("RFC") to perform work at any exertional level except "she must avoid even moderate exposure to hazards, such as dangerous moving machinery and unprotected heights. She can understand, remember and carry out simple and some complex instructions; can relate to supervisors and co-workers in a superficial manner, but should avoid contact with the general public; and can adapt to a work situation." (TR 18-22).

Relying on the VE's testimony concerning the exertional and skill characteristics of Plaintiff's past relevant work, the ALJ found that Plaintiff's RFC for work would allow her to perform her previous jobs of file clerk and cook's helper (vegetables). (TR 23). Based on

4

these findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act. "Because the Appeals Council denied review [of this decision], the ALJ's decision is the Commissioner's final decision for purposes of this appeal." Madrid v. Barnhart, 447 F.3d 788, 789-790 (10th Cir. 2006).

IV. New Evidence Submitted to Appeals Council

The ALJ issued his decision on March 30, 2007. Plaintiff requested review of the ALJ's decision by the Appeals Council. In connection with the appeal, Plaintiff submitted new medical evidence that had not been considered by the ALJ. This evidence consisted of records of treatment of Plaintiff at the Mercy Health Center's emergency room in September 2006 (TR 388-401), St. Francis Hospital's emergency room on July 30, 2007 (TR 411-423), Laureate Psychiatric Hospital from July 30, 2007 to August 7, 2007 (TR 424-452), and at Red Rock Behavioral Health Services clinic between August 9, 2007 and August 30, 2007. (TR 453-482). Plaintiff contends that this new evidence shows she was not able to "maintain concentration and pace sufficient to engage in substantial work" or to "consistently maintain employment." Plaintiff's Brief, at 3. In support of her argument, Plaintiff specifically points to the record of Plaintiff's inpatient mental health treatment in July-August 2007, following a "suicide attempt" by Plaintiff on July 30, 2007. Plaintiff's Brief, at 3-4. Plaintiff contends that the Appeals Council did not properly consider this new evidence and the case should be remanded for proper consideration of the new evidence by the Commissioner.

Pursuant to the governing regulations, "[t]he Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or

before the date of the [ALJ] hearing decision. It will then review the case if it finds that the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. §§ 404.970(b), 416.1570(b). Defendant asserts that the Appeals Council considered the new evidence and denied Plaintiff's request for review. Defendant asserts that the Appeals Council was not obligated to review the new evidence submitted by Plaintiff because it did not concern medical records or impairments originating during the time period prior to the ALJ's decision and therefore was not "material" evidence.

In its order denying Plaintiff's request for review, the Appeals Council did not determine whether the evidence submitted by Plaintiff in her administrative appeal qualified as "new," "material," or chronologically relevant as contemplated by the regulations. However, the Appeals Council stated that it had considered the evidence and made it a part of the record. (TR 6, 9). See O'Dell v. Shalala, 44 F.3d 855, 859 (10th Cir. 1994)(any new evidence submitted to the Appeals Council on review "becomes part of the administrative record to be considered when evaluating the [Commissioner's] decision for substantial evidence"). Under these circumstances, the Appeals Council's statement is interpreted as "an implicit determination [the claimant] had submitted qualifying new evidence for consideration. As a result, the Appeals Council was required to 'consider' [the new] treatment records as part of its 'evaluat[ion of] the entire record' to determine whether to 'review the case.' 20 C.F.R. § 404.970(b)." Martinez v. Barnhart, 444 F.3d 1201, 1207 (10th Cir. 2006).

The Appeals Council stated in its order that it denied Plaintiff's request for review

based on a consideration of the entire record, including the new evidence presented by Plaintiff with her administrative appeal. (TR 6). Thus, the record shows "the Appeals Council adequately 'considered ... the additional evidence,' meaning that it 'evaluate[d] the entire record including the new and material evidence submitted." Martinez, 444 F.3d at 1207 (quoting 20 C.F.R. § 404.970(b)). There is "nothing in the statutes or regulations that ... require[s] [a specific] analysis where new evidence is submitted and the Appeals Council denies review." Id. at 1208. See Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005)(where Appeals Council states that it considered the additional evidence, "our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter").

Plaintiff contends that the evidence related to her "suicide attempt" in July 2007 and subsequent mental health treatment showed she did not have the ability to perform the mental requirements of her past relevant work. Defendant responds that there is substantial evidence in the record to support the ALJ's fourth step decision.

The ALJ found in his decision that Plaintiff's mental impairments due to anxiety disorder, bipolar disorder, and posttraumatic stress disorder had resulted in functional limitations. (TR 18). However, the ALJ found that Plaintiff's functional limitations were not severe and that she had only mild limitation in her activities of daily living, moderate difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation. (TR 18)(tracking the requirements of the listings for affective disorders and anxiety-related disorders at 20 C.F.R. Pt. 404,

Subpt. P, App. 2, §§ 12.04 and 12.06). In connection with these findings, the ALJ expressed his consideration of the medical evidence in the record, including the report of the psychological consultative examiner, Dr. Swink, who conducted a mental status examination of Plaintiff in January 2004 (TR 220-223), the records of Dr. Ghaznavi, Plaintiff's treating psychiatrist at North Rock Medication Clinic between August 1, 2005 and October 3, 2006 (TR 346-368), and the psychiatric review technique form and mental RFC assessment completed by Dr. Pearce for the agency as a non-examining consultant (TR 276-295).

In connection with these findings, the ALJ also determined that Plaintiff's subjective complaints of disabling physical and mental impairments were not entirely credible. The ALJ provided a thorough explanation of his reasons for this credibility determination, and those reasons are well supported by the record. (TR 22). The ALJ's findings as to Plaintiff's functional limitations resulting from her mental impairments and her mental RFC are also well supported by the record before the ALJ, including the report of Dr. Swink and the mental RFC assessment by Dr. Pearce. The only evidence to which Plaintiff points as being inconsistent with the ALJ's RFC finding is the new evidence submitted by Plaintiff with respect to her mental health treatment from July 30, 2007 to August 30, 2007. In particular, Plaintiff points to GAF scores[1] entered in Plaintiff's treatment records at Laureate Psychiatric

---

[1]The diagnosis of mental impairments "requires a multiaxial evaluation" in which Axis I "refers to the individual's primary clinical disorders that will be the foci of treatment," Axis II "refers to personality or developmental disorders," Axis III "refers to general medical conditions," Axis IV "refers to psychosocial and environmental problems," and Axis V "refers to the clinician's assessment of an individual's level of functioning, often by using a Global Assessment of Functioning (GAF), which does not include physical limitations." Schwarz v. Barnhart, No. 02-6158,

Hospital in July 2007.[2]

The new evidence submitted by Plaintiff in her administrative appeal reflects that Plaintiff sought emergency room treatment on July 30, 2007, where she and her husband indicated that she had been "hearing voices telling her to hurt herself.... for several months" and she had not slept for "several days." (TR 417). Plaintiff stated that she was a "housewife," that she had no physical complaints, but that she had been "very paranoid the past 4-5 days." (TR 419). Plaintiff was apparently encouraged by the examining physician to seek mental health treatment as she reportedly left the emergency room with her husband to drive to a private psychiatric hospital, Laureate. (TR 417-418).

Upon her admission at Laureate that same day, Plaintiff described an incident in which she had been camping with her husband and two children, had gotten into an argument with some neighboring campers, the police were called, and she hid in the woods and eventually walked or somehow managed to get to her residence some 30 miles away. (TR 424). She then wrote a suicide note and crashed her vehicle in the driveway of her home. Plaintiff admitted she had been consuming alcohol and pain medication during the camping trip and that she had been "feeling fine for about 6-12 months previous." (TR 424). Although she

---

2003 WL 21662103, at *3 fn. 1 (10th Cir. July 16, 2003)(unpublished op.)(citing the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (DSM-IV)(4th ed. 1994), pp. 25-32).

[2]In her brief, Plaintiff states that she was admitted to the Laureate Psychiatric Hospital on July 31, 2008, and discharged on August 7, 2008. Plaintiff's Brief, at 3. These dates appear to be an inadvertent typographical error, as the records provided by Plaintiff reflect Plaintiff's inpatient treatment at this hospital from July 30, 2007, until her discharge on August 7, 2007. (TR 424-452).

described a previous diagnosis of bipolar disorder 2 ½ years previously and medication prescribed at that time for bipolar disorder and a seizure disorder, Plaintiff admitted she had not taken these medications "in a long period of time..." (TR 424).  Plaintiff stated that she had been married for 14 years and had two children and that "one of her primary problems" was getting angry and yelling at her children. (TR 428).  Plaintiff reported she lived on a ten-acre property with her family and "really like[d] outdoor activities including camping, kayaking on their pond, and walking through the path on the ten acres." (TR 429).  She reported membership in and positive support from her church, as well as support from her family and her husband's family. (TR 429-430).  Plaintiff reported that this "episode of bizarre behavior" she had described had happened only once before, "approximately five years ago," and that she just wanted to improve her ability to manage these outbursts and her anger. (TR 430).   The reviewer noted that Plaintiff was "appropriate, pleasant, and cooperative throughout th[e] assessment interview." (TR 430).

Medications were prescribed, and Plaintiff reportedly "improved gradually over her stay" and was discharged on August 7, 2007, with medications and aftercare treatment at Red Rock mental health clinic.  (TR 432).  Although at the time of her admission to the mental health facility the treating psychiatrist noted a current GAF score of 35, at the time of her discharge the treating psychiatrist noted an Axis V GAF score of 65. (TR 432, 437).  The treating psychiatrist also noted that Plaintiff's "[h]ighest GAF in past year" was 50. (TR 432). Plaintiff's treating psychiatrist also indicated that the mental health professionals at the facility did not agree with the prior diagnosis of bipolar disorder and posttraumatic stress

10

disorder and instead diagnosed Plaintiff with major depressive disorder, recurrent, without psychotic features. (TR 434).

The record shows that during Plaintiff's short-term inpatient treatment at the Laureate mental health facility she improved with medications and therapy. Plaintiff reportedly stated that before the incident on July 30, 2007, she had "fe[lt] fine" for the previous year and had been taking anti-anxiety medication that "ma[de] going out in public easier." (TR 428, 433). There is substantial evidence in the record, including the record of Plaintiff's short-term inpatient mental health treatment in July-August 2007, to support the ALJ's RFC finding. Plaintiff related a history of "panic attacks" around groups of people. (TR 433). The ALJ's RFC finding that she should "avoid contact with the general public" is consistent with Plaintiff's complaint of ongoing anxiety in public situations. The vast improvement in her treating psychiatrist's assessment of her GAF scores over the brief course of her inpatient treatment in 2007 indicates that Plaintiff's mental impairments were controlled with medication and that Plaintiff's mental impairments did not prevent her from working. See Pisciotta v. Astrue, 500 F.3d 1074, 1079 (10th Cir. 2007)(GAF score of 65 "falls within the middle of the range indicating '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships.'")(citing DSM-IV-TR, at 34). The ALJ relied on the VE's testimony in finding that Plaintiff's RFC for work did not preclude her performance of two of her previous jobs. The VE's testimony provides substantial evidence in the record to

support the ALJ's step four finding that Plaintiff was capable of performing her previous jobs as a file clerk and cook's helper (vegetables). Thus, the Commissioner's decision should be affirmed.

### RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter AFFIRMING the decision of the Commissioner to deny Plaintiff's applications for benefits. The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before October 20th, 2008, in accordance with 28 U.S.C. § 636 and LCvR 72.1. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ____29th____ day of ____September____, 2008.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE